SUCRERIE CENTRAL COLOSO DE PORTO RICO v. FAJARDO.

(Circuit Court of Appeals, First Circuit. February 5, 1918.)

No. 1294.

1. VENDOR AND PURCHASER ⬦⟿18(1)—CONTRACTS—OPTIONS.

    Though on its resident agent's submission of plaintiff's offer for the purchase of a sugar plantation, defendant, a French corporation, replied that the negotiations could not be completed by cable, and suggested that plaintiff come to Paris, plaintiff was given no option for the purchase of the property, entitling him to recover damages because it was sold by defendant before his arrival in Paris to conclude negotiations; it appearing that plaintiff relied on a contract claimed to have been entered into by cabled acceptance of his offer, and, finding that position untenable at trial, advanced the theory of an option.

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. Jury ☞37—Infringement of Right—Review—Direction of Verdict.

In an action for breach of an alleged contract for the sale of a sugar plantation, the Circuit Court of Appeals, though finding there was no evidence warranting submission of the case to the jury and that a verdict should have been directed for defendant, cannot, on defendant's writ of error, enter a verdict and render judgment for defendant, but must remand for new trial.

In Error to the District Court of the United States for the District of Porto Rico; P. J. Hamilton, Judge.

Action by Mateo Fajardo against the Sucrerie Central Coloso de Porto Rico. From the judgment, defendant brings error. Reversed and remanded, for further proceedings not inconsistent with the opinion.

Francis H. Dexter, of San Juan, Porto Rico, and Albert B. Boardman, of New York City (O'Brien, Boardman, Harper & Fox, of New York City, and Jacobs & Jacobs, of Boston, Mass., on the brief), for plaintiff in error.

Willis Sweet and Miles M. Martin, both of San Juan, Porto Rico, for defendant in error.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge. This is a writ of error from a judgment of the District Court of the United States for the District of Porto Rico, in an action of contract brought by Mateo Fajardo, a citizen of Porto Rico, against the Sucrerie Central Coloso de Porto Rico, a corporation organized under the laws of the republic of France, doing business in Porto Rico, with its principal office at Coloso, in the municipality of Aguadilla, Porto Rico.

The undisputed facts in this case are as follows:

On the 12th day of August, 1916, the defendant was the owner of a certain sugar plantation, known as "Central Coloso," situated at Coloso. Its principal officers resided in Paris, France; but a resident director of the corporation, Carlos Franco Soto, resided at Aguadilla, and had the management of the plantation. On the 12th day of August, 1916, the plaintiff, having heard that the Central Coloso was for sale, called upon the director at Aguadilla and inquired if the report was true, and the price for which the property could be purchased, and also asked for an inventory of the same. He was told by the director that his request would be submitted to his principal in Paris, and the director on that day accordingly sent the following cablegram:

Aguadilla, P. R.

Mateo Fajardo, Proprietor Central Eureka, asks for inventory of Coloso. What is the price? What are your conditions of sale—conditions of payment? I believe that he can exceed offers of other persons. It will be to your advantage to have competition among buyers. Send me complete instructions. We will write the details. Stop. Duplicate telegram requested, translates exact text in French. Code words prohibited.

Franco Soto.

On the 18th day of August, 1916, the director was instructed from Paris by the officers of defendant to advise the plaintiff that the selling

price was $1,500,000, and if the inquiry was a serious one to deliver to the inquirer an inventory of the property. The price was communicated to the plaintiff, and he was also given an inventory of the property, showing it to consist of a sugar plantation, together with land, machinery, and general equipment necessary to the working of a cane plantation and the manufacture of sugar upon a large scale, and its value to be $2,380,159.11.

The plaintiff, upon receipt of the price and inventory, made an offer, through the director of $1,400,000 for the property; $400,000 to be paid in cash and $1,000,000 in ten years, bearing 5 per cent. interest, and to be secured by a mortgage upon the property.

On September 1, 1916, the director wrote the plaintiff, as follows:

Coloso, Porto Rico, Sept. 1, 1916.

Mr. Mateo Fajardo, Mayaguez.

Dear Sir and Friend: We inclose herewith an itemized statement of the inventory of this corporation, as well as a description of the sugar manufacturing machinery.

We avail ourselves of the opportunity to inform you that we received yesterday a cablegram from our office in Paris which, after being translated, reads as follows: "We cannot arrive at any conclusion by cable if failing to deal with the matter. Why does he not come to Paris without delay? Advise us at the time of his departure."

This cable refers to your suggestion of going over to Paris to deal with the matter personally, and as they asked us to advise them by cable when you leave, please advise us by wire from San Juan the day of your departure.

Without anything further, we repeat that we are at your orders.

Very truly yours,    Sucrerie Centrale Coloso de Porto Rico,
Carlos Franco Soto, Director.

The full text of the cablegram sent by the defendant to its resident director, translated from the cipher which was employed, is as follows:

Paris 30 August 1916.

Soto, Aguadilla.

Cannot arrive at any conclusion by cable. If our party means business, why does he not come Paris without delay? At the time of departure telegraph here. As per your telegram 26th, awaiting for letter from before acting. 12 August. Thanks.    Seilhac.

Upon the day of the receipt of this letter the plaintiff sailed from Mayaguez, Porto Rico, for New York, intending to sail at once from there for Paris. Arriving in New York, he made arrangements for an advancement of money needed for the purchase of the plantation, and sent the following cablegram to the defendant in Paris:

Via Commercial Central    Sept. 15    Paris de New York    15
13 Vcial.

Arranging passport; will notify sailing date cable address Cabasa, New York.    Fajardo.

In reply the plaintiff received the following cablegram:

Paris 16 September 1916.

Fajardo, Cabasa, New York.

President Coloso absent. We sent him your cable. He will return before the end of September. You will find him if you come now.    Seilhac.

This cablegram was signed by the managing director of the defendant in Paris.

On receipt of this cablegram the plaintiff sent the following cable-gram:

Via  Commercial  Central       Sept.  16       Paris       New  York       30
    10 Vcial.
    Sailing Saturday; will be there end of September.                 Fajardo.

The plaintiff sailed from New York on Saturday, September 16, 1916, arrived in Liverpool on September 23, and in London upon the next day, intending to cross the English Channel that night; but, finding that the English government had suspended the crossing of the Channel because of submarines, he sent the following cablegram to the defendant:

Central 26 Sept. 16 London 590 2 25 17 H. 36
    Have been delayed on account suspension boats.   Will go first boat leaving.
                                                     Fajardo, Hotel Cecil.

The plaintiff did not secure passage across the English Channel until the night of September 27. On reaching Paris he went to the office of the defendant and found Mr. Seilhac and gave him a letter from Mr. Carlos Franco Soto, and told him that he had come to complete the purchase of the "Coloso." Mr. Seilhac told him that the property had been sold that morning to another, and the next day he wrote him a let-ter in French, the English translation of which follows:

Sucrerie Central Coloso de Porto Rico,
3 Rue St. Georges, Paris, Sept. 29, 1916.
Mr. M. Fajardo, Hotel Meurice, Rue de Rivoli, Paris.
    Sir: We take the advantage to confirm what we told you yesterday, 28th September, at your call at our office.
    The circumstances that have delayed your arrival in Paris have not allow-ed us to prolong our delay beyond the 28th of September, that we had ac-cepted as the term to give a definite answer.
    As we have stated to you, we have awaited for your arrival to the extreme limit, and we were sorry not to have been able to consider the summary offer you made us by cable, which left many points indefinite.
    Kindly receive the assurance of our sentiment.
                                                     L'Administrateur delegue,
                                                     H. de Seilhac.

The plaintiff then returned to Porto Rico and filed this complaint in the District Court, which, after stating the facts as above, set forth the plaintiff's cause of action in part as follows:

    "III. Plaintiff further says that, upon receipt of said price and inventory, he immediately offered the defendant at Paris, through their director, Carlos Franco Soto, the sum of one million four hundred thousand dollars ($1,400,-000) for said property.
    "IV. Plaintiff further says that, in reply to the said offer, the defendant, on September 1, 1916, and in answer to his said offer, cabled its said director at Aguadilla, in the French language, for delivery to plaintiff, as aforesaid, its acceptance of said offer, but requiring plaintiff to come to Paris without delay, as such business could not be settled by cable."

The defendant in its answer denied that at any time it accepted the offer of the plaintiff. It admitted the receipt, under date of August 31, 1916, by its resident director, of the cablegram of August 30, 1916, but denied that it constituted an acceptance of the plaintiff's offer.

It also states that the plaintiff at the time of his departure from

Porto Rico for New York, as alleged in his complaint, had knowledge that a local mercantile society, known as "Sucesores de Bianchi," was making efforts to purchase the property in question, and that one of the members of the society was at that time in Paris, endeavoring to effect a purchase of the property from the defendant.

It is evident that the construction that can be legally and fairly placed upon the cablegram of August 30, 1916, sent by the managing director in Paris to the resident director in Porto Rico, will determine the rights of the parties.

It is immaterial whether the law of France or of Porto Rico governs the construction, since that of both is practically identical, so far as it relates to the essentials of a contract, and, in principle, is in harmony with our own law.

The whole of this cablegram was not communicated by the resident director to the plaintiff; but so much of it as was communicated appears in the letter of September 1, 1916, addressed to the plaintiff by him. Before the receipt of this letter the plaintiff had received a telephone communication from the resident agent in regard to the cablegram, and testified that in this communication by telephone he was informed that the offer had practically been accepted and the details were to be discussed, and that this was the construction which both he and the resident agent placed upon it.

He testified as follows in regard to this cablegram:

"I relied upon this cable, which I construed an acceptance, and the information that I received from Mr. Franco. I knew that Mr. Franco had no authority to sell the property, but he certainly had the authority to be an intermediary between the French people and me. * * *

"Between me and Mr. Franco Soto there was a complete understanding that my proposition had been accepted as to price—as to price.

"I never said that Mr. Franco Soto told me that Coloso people had accepted my price of $1,400,000. I said that he understood that they had accepted the price of $1,400,000, and that they told me to come to Paris to settle the details. * * *"

The resident director testified that the data or notes for transmission of the cable of August 27, 1916, containing the offer of the plaintiff, were furnished by the plaintiff, and on the same day that this cable was sent the plaintiff telephoned him, and he states this was the conversation:

"I now remember perfectly well that on the same day, during the night, Mr. Fajardo called me up by 'phone—and Mr. Fajardo had knowledge that Mr. Bianchi had left for Paris, or was about to sail for Paris—and he said to me by 'phone, 'I would like to send another cable asking them to answer me immediately this cable which we sent.' I persuaded him that that cable would be useless, because Paris would take all the time necessary to consider and go into that proposition, and then I confirmed to him, or stated to him, that Bianchi was leaving for Paris, and then he said, 'Well, I desire also to go to Paris, and therefore I would ask you to send a cable setting forth that I also want to sail for Paris.'

"Mr. Fajardo was the first to suggest the visit or trip to Paris, because Mr. Fajardo knew that Bianchi was leaving or about to leave for Paris. I had no interest whatsoever, of course, in encouraging or contributing to the action of Mr. Fajardo in this matter. I had friendship with him. I had known him for a long time.

"The cable sent was sent in view of the fact that Mr. Fajardo desired to go to Paris."

This was the cable:

Aguadilla, P. R., Aug. 28, 1916.

Fajardo expects to depart for Paris. See if you can do nothing before arrival unless you will accept with the condition specified our telegram of the 25th. Answer as soon as possible.                                    Franco.

He also testified that the telegram of the 25th, referred to in this cable, was the one in which Mr. Fajardo tendered the offer of $1,400,-000, and that he addressed a letter to the company in Paris about this matter on the 29th, and in that letter repeated the conversation which he had held with Mr. Fajardo.

The following extract of this letter was offered in evidence:

"Extract from a letter from Mr. Soto, dated the 29th of August:

"Mr. Fajardo. On Saturday, the 26th, this gentleman called me up on the telephone to ask me to be good enough to transmit to you a cable, asking an immediate reply, if possible, with regard to the proposition of $1,400,000 which he had made you by cable the day before. I persuaded him that this reply would not, in my opinion, be obtained, and that Paris would take all the time necessary before saying anything at all in this connection, unless he, Mr. Fajardo, submitted the proposition of $1,500,000 cash down. I also informed him that the news of Mr. Francisco Bianchi's departure for Paris had been confirmed. That is the reason for the cable which I transmitted to you and which I repeat separately.

"Mr. Fajardo had before that communicated to me the desire to go to Paris and negotiate with you personally about this matter, but the accidents of war detained him; departure of Bianchi was necessary to decide him, and he is only awaiting your reply in order to make up his mind."

In reply to his cablegram of August 28, 1916, announcing the plaintiff's intention to go to Paris, Mr. Soto testified he received the cablegram dated August 30, 1916, and signed "Seilhac," that he read the cablegram to Mr. Fajardo over the 'phone, both in French and in Spanish, and that the plaintiff said:

"'Carlitos, you can't imagine how glad I am, because what I want I have obtained; that is to say, I want to go to Paris. There I will beat the Bianchis against the wall. If it is necessary to bid one hundred or two hundred thousand dollars more, I will do it, because I want to undo them. I will carry through this business by all means, and, if I fail, I will compel the Bianchis to pay an excess of one hundred thousand dollars or two hundred thousand dollars,' and then he said to me, 'Send me that cable in a letter, because I want to keep it in my files,' and at the same time he said to me, 'When you send me that letter, inserting that cable, send me also a letter of introduction for Paris;' and on the next day I sent him this letter, with a letter of introduction:

"'September 1, 1916.
"'Sucrerie Centrale Coloso de P. R., 3 Rue St. Georges, Paris, France.

"'Sirs: I have the honor to introduce to you by these presents M. Mateo Fajardo, owner of the Central Eureka, who, according to your answers by cable dated August 31, will sail for Paris for the purpose of dealing personally with you, concerning the negotiations in connection with the purchase of the Coloso.

"'I would request you to please lend Mr. Fajardo your most efficient co-operation during his sojourn in Paris, and being certain that you will accord him a favorable reception, for which I thank you in advance, I remain,
"'Yours obliging.'"

At the close of the testimony the defendant requested the court to instruct the jury to return a verdict for the defendant. The court's refusal to give this instruction is assigned as error.

In submitting the case to the jury, the court, at the request of the defendant, gave the following instructions in relation to the cablegram of August 30, 1916:

"The court instructs you that this cablegram did not constitute an acceptance of the counter offer made by plaintiff to the defendant in the cablegram transmitted by plaintiff, through the resident manager, directed to Paris, on the 27th of August, 1916, in which plaintiff offered the sum of $1,400,000.

"The court instructs you that even though you believe from the evidence that when the resident manager, Mr. Franco Soto, advised plaintiff of the receipt of this cable, he failed to advise him of the whole text thereof, and particularly of the latter part, stating, 'Awaiting for letter before acting— August 12th,' this circumstance did not justify plaintiff in construing such cablegram as he understood it, to be an acceptance of his counter offer."

The court further instructed the jury:

"Now gentlemen, you will observe that I can go this far. There was not any sale. It is impossible to consider that there was a sale."

But, having given these instructions, the case was submitted to the jury, with the following instructions, which is assigned as error:

"This suit is based upon the theory that there was an option given by the French company to the plaintiff to come to Paris and negotiate over a $1,400,-000 proposition of sale and to do it in the month of September, and that he had all the month of September. That is the theory of the complaint. Now, it is for you to say whether the facts bear that out. I can only say this, that if you believe the Coloso in Paris took under consideration the offer of Fajardo of $1,400,000, and said to him to come to Paris and get there in September, and we will consider the terms of payment if you think the papers amount to that, and that Coloso, in the month of September, turned around and put it out of their power to carry out this option, then you would have to find for the plaintiff; that is, if you believe Fajardo did his part in being ready."

The jury having been instructed that there was no evidence of sale, it is evident that their verdict was based upon a finding that an option had been given the plaintiff to purchase the property for $1,400,000, and that this option was to continue during the month of September, 1916.

[1] The complaint did not allege that the defendant had given the plaintiff such an option, or any option; and, even if the plaintiff had made such allegations, we are unable to place a construction upon the cablegram of August 30, 1916, which would show that an option was given the plaintiff. It states, in unambiguous terms, that it is impossible to conclude negotiations by cable, and asks why the plaintiff does not come to Paris, evidently for the purpose of treating with him personally, because Mr. Soto had notified Mr. Seilhac that the plaintiff desired to go. The plaintiff had not asked for an option, and the letter of introduction which Mr. Soto gave him to present to the officers of the company in Paris conclusively proves that he understood that the plaintiff was going to Paris "for the purpose of dealing personally" with them.

We find in none of the cablegrams or correspondence, or the testimony, any evidence of an option which should have been submitted to the jury, and therefore that there was error in the instructions given by the presiding judge and in his refusal to instruct the jury, as requested by the defendant, to return a verdict for it.

Entertaining this view, a discussion of the other assignments of error is unnecessary.

[2] While we are of the opinion that there was no evidence warranting the submission of the case to the jury, and that a verdict should have been directed for the defendant, nevertheless, as we are without authority to enter a verdict and judgment for the defendant, the case must go back for a new trial. Slocum v. New York Life Insurance Co., 228 U. S. 364, 379, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.

The judgment of the District Court of Porto Rico is reversed, and the verdict set aside. The case is remanded to that court for further proceedings not inconsistent with this opinion; the plaintiff in error to recover costs in this court.